UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GABRIEL HYNES,

        Plaintiff,

vs.                                Case No. 3:19-cv-16-J-34JRK

CERTAIN INTERESTED UNDERWRITERS
AT LLOYD'S, LONDON SUBSCRIBING
TO POLICY NUMBER AGY 14079205;
and ZURICH AMERICAN INSURANCE
COMPANY,

        Defendants.
_____/

## O R D E R

**THIS CAUSE** is before the Court sua sponte. Federal courts are courts of limited jurisdiction and therefore have an obligation to inquire into their subject matter jurisdiction. See Kirkland v. Midland Mortgage Co., 243 F.3d 1277, 1279-1280 (11th Cir. 2001); see also Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). This obligation exists regardless of whether the parties have challenged the existence of subject matter jurisdiction. See Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999) ("[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking.").

Plaintiff, Gabriel Hynes, originally filed this lawsuit in the Fourth Judicial Circuit Court in and for Duval County, Florida. See Complaint (Doc. 3, Complaint). On January 2, 2019, Defendants Certain Interested Underwriters at Lloyd's, London Subscribing to Policy Number AGY 14079205 and Zurich American Insurance Company (Defendants), filed a Notice of Removal (Doc. 1, Notice), notifying the Court of their intent to remove this

action to the United States District Court for the Middle District of Florida, Jacksonville Division, and purporting to set forth the facts establishing that the Court has jurisdiction over this action.  See Notice at 2-3.  Specifically, the Defendants assert that the Court has subject matter jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.  Id.  In support of this assertion, the Defendants allege that Plaintiff is a "resident of Florida."  Id. at ¶ 4.  The Defendants further assert that the interested underwriters at Lloyd's London include five different entitles, one of which is an "English corporation with its principal place of business in London, England," id. at ¶ 5a, and that the other four are "English Syndicate(s), with [their] principal place(s) of business in London, England."  Id. at ¶ 5b-e.  Finally, the Defendants allege that "Zurich, is a New York corporation with its principal place of business in New York."  Id. at ¶ 6.  The Defendants' allegations are insufficient to enable the Court determine its subject matter jurisdiction over this action.

Diversity jurisdiction requires complete diversity or that "all plaintiffs must be diverse from all defendants."  Univ. of S. Ala., 168 F.3d at 412; see also Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828 (1989) ("When a plaintiff sues more than one defendant in a diversity action, the plaintiff must meet the requirements of the diversity statute for each defendant or face dismissal").  First, in order to establish diversity over a natural person, a party must include allegations of the person's citizenship, not where he or she resides.  Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994).  A natural person's citizenship is determined by his or her "domicile," or "the place of his true, fixed, and permanent home and principal establishment . . . to which he has the intention of

returning whenever he is absent therefrom." McCormick v. Aderholt, 293 F.3d 1254, 1257–58 (11th Cir. 2002) (quotation and citation omitted). Accordingly, the assertions in the Notice as to Plaintiff, Hynes', residence are insufficient to establish his citizenship for diversity purposes. See Taylor, 30 F.3d at 1367 ("Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person."); see also Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989) ("'Domicile' is not necessarily synonymous with 'residence[.]'").

In addition, the Defendants fail to adequately allege the citizenship of the four syndicates that subscribe to the Policy named in this action. In the Notice, the Defendants attempt to establish the syndicates' citizenship by alleging some of the information necessary to plead the citizenship of a corporation, specifically, that the syndicate Defendants have their principal places of business in London. See Notice at ¶ 5b-e; see also 28 U.S.C. § 1332(c). However, in Underwriters at Lloyd's, London v. Osting-Schwinn, 613 F.3d 1079 (11th Cir. 2010), the Eleventh Circuit instructs that a syndicate is not treated as a corporation for purposes of diversity jurisdiction, rather it falls "squarely within the class of unincorporated associations for which the pleading of every member's citizenship is essential to establishing diversity jurisdiction." Osting-Schwinn, 613 F.3d at 1088-89. As such, because the Notice does not properly identify the "'citizenship, of the [underwriters] involved in the case . . . it [is] impossible to say that complete diversity exists.'" Id. at 1092 (alteration in original) (quoting E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925 (2d Cir. 1998)). Accordingly, based on the limited

3

information alleged in the Notice, the Court cannot determine the syndicate Defendants' citizenship for purposes of diversity jurisdiction.[1]

In light of the foregoing, the Court will give the Defendants an opportunity to provide the Court with additional information to establish the citizenship of the parties and this Court's diversity jurisdiction over the instant action.[3] Accordingly, it is

**ORDERED**: Defendants shall have until January 28, 2019, to provide the Court with sufficient information so that it can determine whether it has diversity jurisdiction over this action.

**DONE AND ORDERED** at Jacksonville, Florida on January 7, 2019.

MARCIA MORALES HOWARD
United States District Judge

---

[1] Indeed, carefully ascertaining the citizenship of the parties and whether the Court has subject matter jurisdiction over this action is more than just an academic exercise, as is evident from two recent Eleventh Circuit cases. See Thermoset Corp. v. Bldg. Materials Corp of Am., 849 F.3d 1313, 1316-1317 (11th Cir. Mar. 2, 2017) (vacating summary judgment order after three years of litigation where court determined on appeal that the pleadings below had not sufficiently alleged the citizenship of a defendant limited liability company, and upon further inquiry, found that the defendant limited liability company had a non-diverse member); see also Purchasing Power, LLC v. Bluestem Brands, Inc., 851 F.3d 1218, 1222, 1228 (11th Cir. Mar. 20, 2017) (discussing whether sanctions were warranted in a case where summary judgment was reversed on appeal after the appellate court discovered that the pleadings did not sufficiently allege the citizenship of the plaintiff LLC, leading to the realization that there was no diversity jurisdiction) ("While the requirements of diversity jurisdiction in this scenario are complicated, they are the law. No party in this case acted with bad intentions, but the result was a colossal waste of time and effort. We trust that the damage done to the parties' credibility, finances, and time is enough of a sanction to curb their conduct and to serve as a warning to future diversity jurisdiction litigants. In the end, when the parties do not do their part, the burden falls on the courts to make sure parties satisfy the requirements of diversity jurisdiction. We must be vigilant in forcing parties to meet the unfortunate demands of diversity jurisdiction in the 21st century.").

[3] The party seeking to invoke the Court's diversity jurisdiction bears the burden of establishing by a preponderance of the evidence that the jurisdictional prerequisites are met. See McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002); see also Taylor, 30 F.3d at 1367 (noting that the "pleader must affirmatively allege facts demonstrating the existence of jurisdiction").

lc 26

Copies:
Counsel of Record